

#400

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ABDALLAH GENDIA,** | : | **Civil Action** 20  1104 |
| **Plaintiff,** | : | |
| | : | **HON.** |
| **v.** | : | |
| | : | FILED |
| **DREXEL UNIVERSITY,** | : | FEB 2 5 2020 |
| **Defendant.** | : | **No.**  KATE BARKMAN, Clerk |
| | | By_____ Dep. Clerk |

## COMPLAINT (CIVIL ACTION)

### I.   INTRODUCTION

1.  This action is for damages and other relief arising from defendant's violation of
    plaintiff's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. §§
    1681-1688 [hereinafter "Title IX"].

### II.   JURISDICTION AND VENUE

2.  This Court has jurisdiction over Plaintiff's federal cause of action pursuant to 28 U.S.C. §
    1331 and 28 U.S.C. § 1334.

3.  Venue is properly laid in this District, as all parties are found therein and all acts and
    events giving rise to the complaint occurred therein.

### III.   PARTIES

4.  Plaintiff Abdallah Gendia is an adult male who, at all times relevant hereto and up until
    the time of his separation from it, attended Drexel University.

5.  Drexel University is a private university that receives federal funding.  At all times
    material hereto, Drexel University (hereinafter "Drexel"), by and through its chief policy
    making officials, agents, employees, and/or representatives, promulgated, maintained,

1

FEB 25 2020

and implemented the policies, practices, and procedures referenced herein, including those related to Title IX

6. Nonparty "Mary Roe" is an adult female who, at all relevant times, was a student attending Drexel and whose identity is known to defendant but is referenced herein as Mary Roe to protect her privacy.

## IV.   ALLEGATIONS OF MATERIAL FACTS

7. In or about summer 2016, Gendia and Mary Roe (hereinafter "Roe") began a romantic relationship.

8. At that time, Gendia was matriculating full-time at Drexel, and had no prior criminal record.

9. Gendia and Roe ended their relationship in or around December 2017.

10. Nevertheless, after ending their romantic relationship they continued to communicate, and to spend time with each other.

11. The relationship between Gendia and Roe was characterized by emotional volatility, including a cycle of separation and reconciliation, but not violence.

12. Over the course of their relationship, and continuing after it ended, Roe publicly expressed willingness to engage in, and did in fact engage in, self-harm, including "cutting."

13. On March 1, 2018, after her relationship with Gendia had ended, Roe filed a complaint with Drexel against Gendia, alleging acts of intimate partner violence, stalking, and sexual harassment.

14. The bases for Roe's complaint were: (1) an allegation that Gendia had choked her in August 2017; (2) an allegation that Gendia threatened to kill her dog in August 2017; and

(3) an allegation that Gendia had punched her in the head, causing her injury, in February 2018.

15. The allegations that Gendia had choked and punched Roe were unfounded and untrue, and Gendia did not threaten Roe that he would kill her dog.

16. Gendia filed a complaint against Roe two days later, on March 3, 2018, alleging acts of harassment based on citizenship status, religion, national origin, and race, and acts of intimate partner violence and stalking, all of which were documented in written correspondence.

17. The bases for Gendia's complaint were: (1) an allegation that Roe eavesdropped on conversations inside his apartment while she was outside; (2) allegations that Roe sent harassing text messages threatening to destroy his property and disparaging him on the basis of race, religion, citizenship status, and national origin, and (3) an allegation that she waited outside his apartment door and then attempted to punch him in the face.

The August 2017 Incidents

18. During their relationship, in August 2017, on a date not presently known, Gendia and Roe attended a party at a fraternity house at which fraternity Gendia was a member.

19. While at the party, Gendia and Roe got in a verbal argument, and Gendia was asked to leave, which he did.

20. Roe also left and returned to her apartment with a group of friends, where they drank alcohol and smoked marijuana.

21. Roe was consuming alcohol with her cohort.

22. At some point, Roe left her apartment and went to Gendia's.

23. At that time, Roe was visibly intoxicated, as she could not keep her balance and was slurring her speech, and was visibly upset.

24. At Gendia's apartment, Roe verbally confronted Gendia in front of his friend.

25. Later, Roe alleged that while talking to Gendia outside his apartment, (a) he pinned her against the wall, (b) choked her, (c) such that she could not breathe.

26. Gendia did not touch her except to catch her to prevent her falling and injuring herself.

27. Roe left a slipper in front of Gendia's apartment, which he soon thereafter returned.

28. On a separate occasion in August 2017, during a phone call with Roe, Gendia made a comment about her dog, and immediately thereafter disavowed any actual, serious intention of harming it.

29. Gendia's comment about Roe's dog was an idle threat borne of frustration during a phone call that lasted over an hour, qualified many times as such, with no objective indication that the comment could be understood as anything else.

30. Roe did not tell anyone, except her friend who she was with during her phone call with Gendia, about the comment or conversation until her March 1, 2018 complaint.

31. Roe's dog was never harmed or put in harm's way.

February 2018 Incident

32. In February 2018, Gendia was living in an apartment at 3512 Lancaster Avenue, a multi-unit property primarily renting to students.

33. At that time, Roe lived elsewhere.

34. On or about February 24, 2018, Roe came to 3512 Lancaster Avenue, where her friend lived, and without began texting Gendia without solicitation from him.

35. Her messages to Gendia indicated she was at 3512 Lancaster and was upset with him, and included profanity-laden threats to harm him and his property.

36. When Gendia returned to his apartment, he was accompanied by a friend.

37. Roe confronted Gendia, in the presence of his friend, on the steps leading to his apartment, which staircase was near a common area, and began a verbal altercation.

38. Roe, standing approximately two steps above Gendia, attempted to hit him.

39. Gendia braced himself and covered his head.

40. She missed, lost her balance, and fell, injuring her head.

41. Gendia and his friend called 911 and brought Roe inside his apartment.

42. Gendia administered basic care to Roe while waiting for medical assistance to arrive.

43. Gendia accompanied Roe to the hospital, where she was treated with stitches for her lacerated forehead .

44. A report of the incident noted Roe's apparent intoxication during the foregoing incident.

45. Roe falsely reported to the hospital and the Drexel Police Department that her injury was the result of Gendia punching her.

46. Gendia was then arrested.

47. Three days later, Roe further embellished the incident by alleging that Gendia was holding keys between his fingers when he struck her.

48. Gendia was charged with several crimes related to Roe's false allegations pertaining to this February 24 incident.

49. Prior to July 5, 2018, Gendia was ultimately acquitted of all charges.

Title IX Investigation and Process

50. After receiving Roe's Title IX complaint, as set forth hereinabove, Drexel began investigating the incident.

51. That investigation was undertaken by Drexel despite its knowledge that Gendia was facing criminal charges relating to one of the incidents alleged by Roe, and had been provisionally banned from campus after an ex-parte restraining order was entered for the benefit of Roe and against him.

52. As a result, Gendia missed the end of his academic term and was unable to complete final exams.

53. Gendia was advised that the provisional ban from campus would be lifted if the restraining order was appropriately modified.

54. Gendia, through counsel, successfully obtained a modification of the restraining order that, by its terms, would not bar him from Drexel's campus.

55. Gendia came to campus to deliver the modified restraining order, as he had been directed by Drexel administrators to do.

56. However, he was advised by Drexel that he was permanently banned from campus, pending the outcome of the Title IX investigation, because, by following Drexel's directive to deliver the modified restraining order, he had "violated" the provisional ban.

57. Gendia's ban from campus had the effect of inhibiting his ability to defend himself and prove his affirmative allegations.

58. Drexel determined to impose an unconditional ban on Gendia's access to campus knowing the ban would detrimentally affect his ability to defend himself and expose him to greater risk of discipline.

59. No similar restrictions were placed on Roe although she too was accused of violence and harrasment directed at Gendia.

60. In an early meeting with Jenna Perez, Gendia denied the allegations that he had hit Roe, and Perez responded that she believed Roe and Gendia would be responsible for disproving the allegations against him if he was to avoid discipline.

61. At all times material hereto, Perez and Drexel administrators knew that, because of the parallel criminal proceeding and the meritless allegations against him, Gendia could not respond to Drexel's requests for information from him without jeopardizing his Firth Amendment rights.

62. After his acquittal, Gendia demanded Drexel have an expert evaluate his claim that Roe's injury to her head was the result of the blunt force trauma of falling to the ground off-balance.

63. Drexel did retain an expert, and, consistent with Drexel's pre-determined outcome, offered an opinion to undermine Gendia's claim that Roe fell, specifically opining that she did not fall.

64. Drexel shared the expert's report with Gendia just days before the adjudicatory hearing and refused to allow him time to produce a rebuttal report.

65. The investigation led by Perez was biased, incomplete, and materially defective in many regards, including but not limited to:

   a. Assuming the veracity and credibility of Roe's account before the investigation had begun;

   b. Assuming Gendia's guilt from the outset;

7

    c.  Maintaining an investigatory and adjudicatory system that favors female students at the expense of male students.

    d.  Asking gender-biased questions of Gendia, framed in such a way that he was asked to disprove Roe's account (i.e., after Gendia offered an explanation of his interaction with Roe that resulted in her injury, his account was treated dismissively and he was asked aggressively "then how did she get cut?");

    e.  Penalizing Gendia, by finding it probative of his guilt or fault, that he did not respond to requests for information by Drexel administrators, despite facing related criminal charges and that such requests could not be honored without jeopardizing Gendia's Fifth Amendment rights.

    f.  Excluding non-relevant evidence offered by Gendia while admitting non-relevant evidence from Roe, i.e., the investigation report did not include Gendia's documented evidence of Roe's acts of self-harm or comments about brown people/professors, but included Roe's unsubstantiated testimonial evidence of Gendia's self-harm.

66. Throughout the investigation, Perez and Drexel were aware of its deficiencies, including but not limited to its failure to consider Roe's lack of credibility.

67. Drexel's Title IX training materials for taking reports and carrying out investigations on campus sexual assault inherently portray women as the victim of men.

68. Drexel has also distributed to students on campus documents that titled "Date Rape/Acquaintance Rape" that portray only women as victims of sexual assault and only men as perpetrators. The document provides "Advice for Women" to avoid rape while

providing "Advice for Men" to "[t]hink about whether you really want to have sex with a woman who does not want to have sex with you."

69. Drexel's investigation and subsequent adjudication was consistent with its own operating procedures and  policies, which resulted in unfair, discriminatory, and erroneous outcomes.  The defects in Drexel's policies which produce unfair, discriminatory, and erroneous outcomes include:

    a.  Permitting a Title IX investigation to occur in tandem with a criminal prosecution;

    b.  A practice effectively requiring accused students to give statements and/or testimony about the incident, even when the accused is subject to criminal prosecution for the same facts;

    c.  A policy or practice permitting an inference of guilt from an accused student's silence or refusal to participate in the Title IX investigation

    d.  Permitting the imposition of greater discipline when an accused student maintains his or her innocence

70. On June 26, 2018, an administrative hearing was held on the charges against both Gendia and Roe.

71. While each was permitted to have an attorney present, their attorneys were not permitted to cross-examine witnesses.

72. On July 5, 2018, Drexel found against Gendia regarding Roe's complaints against him – that he had choked her, harassed her by threatening to kill her dog, stalked her with unwanted communications, threatened to engage in self-harm unless she continued their relationship, and punched her in the head causing a laceration.

73. Drexel found Roe stalked Gendia outside his apartment, harassed Gendia with threatening text messages, and stalked him outside his apartment then attempted to assault him.

74. The evidence does not support the finding of the adjudicator, a problem further compounded by the evidence withheld from the adjudicator by Drexel.

75. Drexel's report, written by hearing adjuciator Kelley Hodge, because it supported Drexel's pre-determined outcome and favored Roe while disadvantaging Gendia, accepted the testimony of a police officer that directly contradicted an earlier report written by the same officer.

76. On July 20, 2018, Drexel notified Gendia that he would be expelled and that Roe would be suspended for approximately six months.

77. Gendia and Roe each appealed their punishments.

78. On August 10, 2018, Drexel found the term of Roe's suspension was too severe, and modified its start date to protect her "co-op credits," and found Gendia's appeal was without merit and denied it.

79. As a result of the foregoing, Gendia failed a term's final exams (because he was not permitted on campus) and missed at least one additional term before his expulsion, suffered emotional and psychological harm, suffered harm to his personal and academic reputations, suffered harm to his opportunities to continue to pursue academic and employment opportunities, including a loss of earning capacity resulting from the delay in his education, was denied the benefits of the education at his chosen school, and retained an attorney for his defense against the disciplinary charges against him, all at great expense.

## V.    CAUSES OF ACTION

## COUNT ONE
## (TITLE IX)

80. Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

81. Title IX prohibits discrimination on the basis of sexing education programs or activities operated by recipients of federal financial assistance.

82. Drexel is an education program receiving Federal financial assistance.

83. Title IX bars the imposition of discipline against students where gender is a motivating factor in the decision to discipline.

84. The implementation of Drexel's policies as set forth more fully above comprise discriminatory against plaintiff, a male student, in favor of a female student, in violation of Title IX.

85. At all times material hereto, Perez and other Drexel agents and employees were "appropriate persons" as the term is construed under Title IX who had actual knowledge of the discriminatory treatment of Gendia, but took no action to halt or abate its effect, for which Drexel is therefore liable.

86. Plaintiff suffered the harms and damages alleged herein as a result of Drexel's violation of Title IX.

## VI.    JURY DEMAND

87. Plaintiff demands a jury  determination of all issues so triable.

## VII.    PRAYER FOR RELIEF

WHEREFORE, plaintiff asks the Court to enter judgment in his favor and against defendant, and grant him the following relief:

   a.   An award of general and compensatory damages;

b.   Reasonable counsel fees pursuant to 42 U.S.C. §1988(b);

c.   Such other relief as the Court deems just and equitable.

Respectfully submitted,

WILLIAMS CEDAR, LLC

Christopher Markos, Esquire
PA ID No. 308997
Gerald J. Williams, Esquire
PA ID No. 36418
1515 Market Street, Suite 1300
Philadelphia, PA 19102
P: 215-557-0099
F: 215-557-0673
cmarkos@williamscedar.com
gwilliams@williamscedar.com
*Attorneys for Plaintiff*

Dated: February 25, 2020

12

JS 44 (Rev. 02/19)                          **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| ABDALLAH GENDIA | DREXEL UNIVERSITY |
| 201 Cobblestone Court | 3141 Chestnut Street, Suite 103, Main Building |
| Monmouth Junction, NJ 08852 | Philadelphia, PA 19104 |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Christopher Markos, Esquire Williams Cedar, LLC
1515 Market Street, Suite 1300
Philadelphia, PA 19102-1929 215.557.0099

Attorneys *(If Known)*

---

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*        Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

---

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title IX of Education Amendments of 1972, 20 U.S.C. Sections 1681-1688
Brief description of cause:
Damages and other relief arising from defendant's violation of plaintiff's civil rights.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 150,001
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE 02/25/2020
SIGNATURE OF ATTORNEY OF RECORD

FEB 25 2020

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

FEB 25 2020



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

20      1104

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 201 Cobblestone Court, Monmouth Junction, NJ 08852 _____

Address of Defendant: _____ 3141 Chestnut Street, Suite 103, Main Building, Philadelphia, PA 19104 _____

Place of Accident, Incident or Transaction: _____ Drexel University, Philadelphia, PA 19104 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/25/2020 _____ _[signature]_ _____ 308997

_Attorney-at-Law / Pro Se Plaintiff_      _Attorney I.D. # (if applicable)_

---

**CIVIL: (Place a √ in one category only)**

| A. | Federal Question Cases: | | B. | Diversity Jurisdiction Cases: |
|---|---|---|---|---|
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | | ☐ 5. | Motor Vehicle Personal Injury |
| ☐ 6. | Labor-Management Relations | | ☐ 6. | Other Personal Injury (Please specify): _____ |
| ☑ 7. | Civil Rights | | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | | ☐ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | | (Please specify): _____ |
| ☐ 11. | All other Federal Question Cases | | | |
| | (Please specify): _____ | | | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Christopher Markos _____, counsel of record or pro se plaintiff, do hereby certify

☒ Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE 02/25/2020 _____ _[signature]_ _____ 308997

_Attorney-at-Law / Pro Se Plaintiff_      _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

FEB 25 2020



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

ABDALLAH GENDIA         :       CIVIL ACTION

v.                     :       20     1104

DREXEL UNIVERSITY       :       NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)        ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        ( X )

| 02/25/2020 | Christopher Markos, Esquire | |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| 215.557.0099 | 215.557.0673 | cmarkos@williamscedar.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FEB 25 2020