WILLIAMS CEDAR LLC
By: Kevin Haverty (PA ID 65789)
Christopher Markos (PA ID 308997)
1515 Market St., Suite 1300
Philadelphia, PA  19102
(215) 557-0099
*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ABDALLAH GENDIA,** | : | CIVIL ACTION |
| Plaintiff | : | No. 2:20-cv-01104 |
| v. | : | |
| **DREXEL UNIVERSITY,** | : | |
| Defendant | : | |

**PLAINTIFF'S SUPPLEMENTAL SUBMSSION IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO *FED R. CIV. P.* 12(b)(6)**

I.  **PRELIMINARY STATEMENT**

On May 26, 2020 plaintiff in the instant matter filed his opposition to defendant's motion to dismiss pursuant to *Fed. R. Civ. P.* 12(b)(6).  Three days later, on May 29, 2020, the Third Circuit issued an opinion in *Doe v. Univ. of the Sciences*, --- F.3d ---, 2020 WL 2786840 (3rd Cir. 2020) reversing the district court's dismissal of Doe's Complaint, finding that the plaintiff there had adequately pleaded gender-based discrimination under Title IX and breach of contract for failure to provide him with a fair process for investigation and adjudicating sexual misconduct complaints.  In reversing, the court rejected the application of the "doctrinal framework" adopted in other circuits and applied by the district court, holding instead that "to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or

university discriminated against a person on the basis of sex." 2020 WL 2786840 at *4. In a footnote in its reply brief filed on June 2, 2020, defendant attempted to distinguish *Doe* by asserting that "the Third Circuit's decision focused on issues that are not present here." Defendant's Reply Brief, Doc. 11 at 4 n. 2. Thereafter, on May 15, 2020 this court, *sua sponte*, invited plaintiff to file a supplemental submission addressing the impact of *Doe* on the pending motion to dismiss.

The Third Circuit's decision in *Doe*, contrary to defendant's assertions, was not "focused on issues that are not present here," but rather involved ***different facts***. And the court expressly rejected the notion of any touchstone for pleading Title IX gender-discrimination claims, simply requiring a set of facts which could plausibly support a claim that the plaintiff was discriminated against on the basis of sex; thereby harmonizing the pleading standards for Title IX claims with the basic pleading standards of *Fed. R. Civ. P.* 8. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged.")

Additionally, and just as significantly, the appeals court held that defendant's disciplinary process failed to provide plaintiff "fundamental fairness" because, among other things, plaintiff was not afforded the opportunity to cross-examine witnesses to challenge their credibility.

Like the plaintiff in *Doe*, plaintiff here has alleged a series of facts which, taken as a whole, plausibly support the claim that the defendant's actions against plaintiff were motivated by gender bias in violation of Title IX. Defendant's motion should be denied.

II.   **LEGAL ARGUMENT**

   A.   IN THIS CIRCUIT A PLAINTIFF NEED ONLY PLEAD FACTS WHICH PLAUSIBLY SUPPORT AN INFERENCE OF GENDER DISCRIMINATION IN A TITLE IX CASE

In *Doe v. Univ. of the Sciences*, --- F.3d ---, 2020 WL 2786840 (3rd Cir. 2020) the Third Circuit reversed the district court's dismissal of plaintiff Doe's complaint of gender discrimination

2

in violation of Title IX holding that the plaintiff had alleged facts which plausibly supported a reasonable inference of gender discrimination regardless of how the claims were framed. The significance of the appeals court decision in *Doe* is its rejection of a "doctrinal framework" for analyzing gender discrimination claims under Title IX, instead holding that all that is required is for plaintiff to plead a set of facts which "plausibly" support an inference of gender discrimination.

The lower court had rejected Doe's complaint of gender discrimination finding that he had failed to adequately plead gender discrimination under one of three theories – erroneous outcome, selective enforcement, and deliberate indifference. *See Doe v. Univ. of the Sciences*, 2019 WL 3413821 (E.D. Pa. 2019). Doe had cited to multiple flaws in the university's disciplinary process which either injected gender bias or were reflective of inherent gender bias. Specifically, he alleged that the university had succumbed to pressure from the Department of Education to put in place a system inherently biased against male students and the process as implemented was tainted by gender bias. The district court rejected those claims as merely "generalized complaints about the University's disciplinary process unmoored from any actual impact on the accuracy of *his* specific process." 2019 WL 341382 at *5 (emphasis in original). On the selective enforcement theory the court noted that a plaintiff must allege facts showing that "regardless of the student's guilt or innocence the severity of the penalty and/or decision to initiate the proceeding was effected by the student's gender," *id.* at *6 (*citing Yusuf v. Vassar College*, 35 F.3d 709 (2nd Cir. 1994) and rejected plaintiff's assertion that he was disciplined for the same behavior which the complainant engaged in but the complainant was not finding that Doe was not a "valid comparator." *Id.* at *7. The court also rejected Doe's deliberate indifference claim noting that "[a]lthough he complains of many facets of the disciplinary process, he has failed to describe how they qualify as

3

"misconduct" or allege facts which would support the inference which would support the inference that the University's response was 'unreasonable in light of the known circumstances.'" *Id.* at *8.

On appeal, the Third Circuit rejected the district court's analysis in its entirety observing that

> [While] [s]ome Courts of Appeals have examined Title IX claims using the doctrinal frameworks announced by the Second Circuit in *Yusuf v. Vassar College*, 35 F.3d 709 (2nd Cir. 1994) . . . [and extended in *Doe v. Miami Univ.* 882 F.3d 579 (6th Cir. 2018)] . . . the Seventh Circuit observed that "all of these theories simply describe ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline a student." Ultimately, the Seventh Circuit "asked the question more directly: do the alleged facts, if true, raise a plausible inference that the university discriminated against the student 'on the basis of sex'?"

*Doe,* 2020 WL 2786850 at *4 (*quoting Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019)).

The appeals court said "[w]e agree with the Seventh Circuit and 'see no need to superimpose doctrinal tests on the Title IX statute':"

> Thus, we adopt the Seventh Circuit's straightforward pleading standard and hold that, to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex. ***Although parties are free to characterize their claims however they wish, this standard hews most closely to the text of Title IX.***

*Id. (quoting Doe v. Purdue Univ.*, 928 F.3d at 667) (emphasis supplied)).

Thus, a plaintiff in this circuit need not allege a particular set of facts which fit neatly into a doctrinal box but rather only facts which, taken together as a whole, plausibly support an inference of gender-discrimination in the disciplinary process. Defendant's effort to distinguish *Doe* from the instant case by urging that the appeals court was "focused on different issues that are not present here" is unavailing. To be sure, *Doe* presented a different set of *facts* from the instant case, but the appeals court did not endeavor to articulate what facts are necessary or

4

sufficient to survive a motion to dismiss at the pleading stage and explicitly rejected such a standard leaving it to a determination of whether the claim is "plausible." Plausible, however, is not to be confused with "probable" and "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the . . . court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

As set out in plaintiff's initial submission in opposition the defendant's motion to dismiss, this case closely parallels *Saravanan v. Drexel Univ.*, 2017 WL 5659821 (E.D. Pa 2017) in which the court found that the plaintiff had plausibly pleaded gender discrimination even under the doctrinal framework applied by the court but now jettisoned by the Third Circuit. The same gender-biased process alleged in *Saravanan* was utilized here and includes the same investigator and disciplinary system hopelessly infected with gender bias. But there are other facts unique to this case – for example Drexel's pursuit of an investigation while plaintiff was under criminal investigation and unable to fully participate in the investigation or the wildly disparate punishments meted out (essentially no punishment for the Complainant for her admitted conduct) – which plausibly support the inference that the investigation and discipline of plaintiff was motivated by gender bias. Taking these facts as true, as required at the pleading stage, plaintiff here has plausibly pleaded gender discrimination in violation of Title IX consistent with the standard articulated in *Doe v. Univ. of the Sciences*. Defendant's motion should be denied.

B. PLAINTIFF SHOULD BE PERMITTED TO AMEND HIS COMPLAINT TO INCLUDE A CLAIM FOR BREACH OF CONTRACT

In *Doe*, the appeals court also addressed plaintiff's breach of contract claim based on the "unfairness" of the process which included, among other things, denial of the opportunity to cross-examine witnesses. As an initial proposition the court noted that the relationship between a student and university is contractual. 2020 WL 2786840 at *6. Moreover the court noted that UScience's

5

Student Handbook and Policy regarding sexual misconduct were part of the contract between Doe and USciences in which USciences promised all students that it will "engage in investigative inquiry and resolution of reports [of sexual misconduct] that are adequate, reliable, impartial, prompt, fair and equitable" and tasks the Title IX coordinator with conducting "a prompt, fair, and equitable investigation process for reports of prohibited conduct at [the university]. *Id.* Because neither the Student Handbook nor the Policy defined "fairness" the court was required to "construe that promise as a matter of contract interpretation." *Id.* at *7.

Starting with the plain meaning of the word "fair" as "just, unbiased, equitable, legitimate, in accordance with rules," *id.* (*quoting The Concise Oxford Dictionary* 347 (7th ed. 1982)), and noting that fairness promised to USciences students was procedural fairness for accused students, the court turned to plaintiff's claim that he did not receive a "fair and impartial hearing." *Id.* The court observed that:

> Procedural fairness is a well-worn concept. Pennsylvania courts have made clear that, at private universities, "basic principles of fundamental fairness are adhered to when the students involved are given notice of the charges and evidence against them, allowed to be present and to participate in the hearing assisted by faculty, to call their own witnesses ***and to cross-examine the witnesses against them***, and are fully apprised of the findings of the hearing panel."
>
> * * * * *
>
> In short, notions of fairness in Pennsylvania law include providing the accused with a chance to test witness credibility through some form of cross-examination and a live, adversarial hearing during which he or she can put on a defense and challenge evidence against him or her.

2020 WL 2786840 at *8-9 (*quoting Psi Upsilon of Phila. V. Univ. of Pa.*, 404 Pa. Super.604, 591 A.2d 755 (Pa. Super. Ct. 1991))

While acknowledging that "[b]asic fairness [in the context of university proceedings] does not demand the full panoply of procedural protections available in courts[,]" the court nevertheless

6

concluded "it does include the modest procedural protections of a live, meaningful, and adversarial hearing and the chance to test witnesses' credibility through some method of cross-examination." *Id*. at *9.  Because Doe was deprived of the opportunity to cross-examine witnesses the court held that he had plausibly set forth a claim that USciences "breached its contractual obligation to provide him fairness."

In the instant case plaintiff, like *Doe*, was denied the opportunity to cross-examine witnesses and raised that claim in his complaint, albeit not in the context of a claim for breach of contract.  But the Third Circuit's articulation of this minimum standard for procedural fairness as a matter of contract, like its rejection of any doctrinal framework for plausibly pleading Title IX discrimination claims, is novel and was not foreseen when plaintiff filed his Complaint.

And as in *Doe*, plaintiff and defendant, as student and university, had a contractual relationship in which there is an implied duty of good faith and fair dealing.  *See Donahue v. Federal Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000) ("[e]very contract in Pennsylvania imposes on each part a duty of good faith and fair dealing in its ***performance and enforcement***") (emphasis supplied).  In light of the Third Circuit's recent decision in *Doe*, plaintiff should be permitted to amend his Complaint to include a claim for breach of contract under the circumstances.  *Estate of Lagano v. Bergen County Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014) ("[W]hether or not a plaintiff seeks leave to amend, a district court considering a 12(b)(6) dismissal must permit a curative amendment unless such an amendment would be inequitable or futile.") (citation and internal quotation marks omitted).

DATED: June 22, 2020 　　　　　　　　　　WILLIAMS CEDAR LLC


　　　　　　　　　　　　　　　　　　　　BY: _/s/ Kevin Haverty_
　　　　　　　　　　　　　　　　　　　　　　　KEVIN HAVERTY

　　　　　　　　　　　　　　　　　　　　　　_/s/ Christopher Markos_
　　　　　　　　　　　　　　　　　　　　　　　CHRISTOPHER MARKOS

## CERTIFICATE OF SERVICE

  I, Christopher Markos, Esquire, hereby certify that on this date, I served a copy of the foregoing document, via the Court's Electronic Case Filing system, and that it is available for viewing and downloading therefrom by Counsel for defendants, in accordance with Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.1.2.

                */s/ Christopher Markos*
                Christopher Markos
                Attorney for Plaintiffs

Dated: June 22, 2020