IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDALLAH GENDIA, | : |
| Plaintiff, | : |
| v. | : C.A. No. 2:20-cv-01104-WB |
| DREXEL UNIVERSITY, | : |
| Defendant. | : |

## **DREXEL UNIVERSITY'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

## **INTRODUCTION**

Notwithstanding that the Court allowed Plaintiff to amend his complaint, Plaintiff's Amended Complaint still does not satisfy his burden to plead more than general, conclusory allegations of gender bias. Plaintiff admits that the Third Circuit's recent *USciences* case is factually distinct and that the decision requires him to plead facts plausibly suggesting gender bias. He fails to do so or explain how *USciences* helps him. And Plaintiff's reliance on the District Court's *Saravanan* decision is misplaced because the plaintiff in that case pleaded far more to suggest gender bias than Plaintiff does here. Plaintiff relies almost entirely on the allegation that Mary Roe received a less severe sanction than he did, but ignores the fact that she was found responsible for very different conduct than he was – she did not send Plaintiff to the hospital by physically assaulting him and she, unlike Plaintiff, took responsibility for her actions.

Plaintiff's newly added breach of contract claim also fails. The only concrete example of Drexel's alleged breach is the supposed failure to provide Gendia an "opportunity" to cross-examine witnesses at the Title IX hearing. But Gendia was provided an opportunity to cross-examine witnesses via questions posed to Ms. Hodge. Plaintiff's only response is to say Ms. Hodge was not obligated to ask every question that was posed. But even if Ms. Hodge

decided certain questions were not relevant, this is hardly unfair, never mind fundamentally unfair. Judges in criminal and civil trials regularly act as gatekeepers to determine what questions are and are not relevant.

For the reasons set forth in Drexel's Motion to Dismiss and herein, the Amended Complaint should be dismissed.

## ARGUMENT

**I.     Plaintiff Has Not Adequately Alleged Violations of Title IX.**

Plaintiff begins his arguments with a discussion of the recent Third Circuit's decision in *Doe v. University of the Sciences*, 961 F.3d 203 (3d Cir. 2020). But his discussion shows that the case does not help him. Plaintiff admits that the allegations there were very different than the allegations here, Pl. Br. at 10-11, and instead focuses on the fact that the Third Circuit held that a plaintiff need not utilize the Second Circuit's doctrinal framework of "erroneous outcome" and "selective enforcement" claims. But Drexel did not dispute this in its opening brief, and Plaintiff does not dispute that a plaintiff still must plausibly plead that gender bias was the motivating factor behind the school's action. *Id.* He fails to explain why *USciences* suggests that he has done so here. He has not.

The District Court's decision in *Saravanan v. Drexel University*, No. 17-3409, 2017 U.S. Dist. LEXIS 193925 (E.D. Pa. Nov. 24, 2017), also does not help Plaintiff. Plaintiff conflates the facts of the *Saravanan* complaint with the facts he has plead in his own Amended Complaint. *See* Pl. Br. at 11-14. The only overlapping fact in the *Saravanan* complaint and the Amended Complaint in this case is that both plaintiffs allude to an alleged document titled "Date Rape/Acquaintance Rape." But, Plaintiff's copying this allegation from the *Saravanan* complaint does not avoid dismissal. It was not this alleged document alone that "evidenced" gender bias in *Saravanan*. Instead, the *Saravanan* amended complaint alleged multiple

statements made by Drexel University officials that (while false) arguably suggested that Drexel administrators disbelieved his claim because he was a man. *Saravanan v. Drexel Univ.*, 2017 U.S. Dist. LEXIS 193925 at *9-14.

For example, the *Saravanan* plaintiff alleged that Drexel University officials stated that the plaintiff's rape claim was "ludicrous" and told him and his attorney she had "never heard of a woman raping a man." Pl. Br. at 11 (citing *Saravanan*). Another official allegedly similarly stated "I have never heard of" a female raping a male. *Saravanan*, 2017 U.S. Dist. LEXIS 193925 at *11-12. That same official also allegedly stated "I've been doing this for thirty years and I've never heard of a guy his age being so scared of a girl." *Id.* at *12. Finally, when plaintiff stated he needed protection from his abuser, the same official allegedly stated "I don't think we do that for guys, I'm pretty sure that's for girls only." *Id.*; Pl. Br. at 11.

The *Saravanan* court makes clear that the plaintiff's erroneous outcome claim survived Drexel's motion to dismiss based on these statements, taken together with other allegations:

> **Mr. Saravanan's allegations taken together** indicate a possible culture of gender bias against males claiming sexual assault by females. Similar to the university in *Doe*, where the court concluded the plaintiff's **allegations of gender bias by the university's staff taken together** plead a Title IX erroneous outcome claim, Mr. Saravanan's allegations of the staff's statements and alleged response to his claims against J.K. indicate Drexel's gender bias against Mr. Saravanan claiming sexual assault against a female.

*Saravanan*, 2017 U.S. Dist. LEXIS 193925 at *14 (emphasis added).

Unlike *Saravanan*, Gendia pleads no statements by administrators suggesting they took any action because Plaintiff is a man. He fails to allege "particular circumstances

suggesting that gender bias was a motivating factor behind the erroneous finding" in *his* case. *Id.* at *9.[1]

Plaintiff relies primarily on the notion that he and Mary Roe were charged with the same conduct but given different sanctions. *See* Pl. Br. at 14-15 ("But the most glaring example of the gender-bias inherent in Drexel's system is the disparity in the penalties imposed on plaintiff and Roe for the same conduct…" and "there clearly was mutual violence with plaintiff being ultimately being [sic] more severely punished for being successful and Roe getting a pass for attempting violence but failing."). This is untrue. As described in Plaintiff's Amended Complaint, Plaintiff and Roe were charged with very different conduct. Gendia was alleged to have *choked* Roe and to have *punched* Roe in the head, along with threatening to kill her dog. Am. Compl. at ¶ 14 (emphasis added). The alleged assault sent Roe to the hospital and Gendia was arrested and criminally charged. *Id.* at ¶¶ 43, 46, 48. In comparison, Roe was alleged to have eavesdropped on Gendia's conversations while outside his door, sent harassing text messages, and *attempted* to punch Gendia. *See id.* at ¶ 17 (emphasis added). These allegations simply not comparable to each other and in no way suggest gender bias.

Not only were the parties charged with different misconduct, but Roe accepted responsibility for her misconduct. Drexel's policies specifically take into consideration acceptance of responsibility when determining a student's sanctions, *see* Title IX Policy (cited in Plaintiff's Amended Complaint at note 1), Appendix A, page vi. Gendia cannot argue the

---

[1] The only specific statement Plaintiff cites in his Amended Complaint comes from Drexel's investigator, Jenna Perez. However, the statement, that Perez "believed Roe and Gendia would be responsible for disproving the allegations against him if he was to avoid discipline," Compl. ¶ 60, does not demonstrate that Perez was biased against Gendia because of his gender. In fact, it does not even reference gender, unlike the *Saravanan* statements. Further, the fact that Jenna Perez was involved in both cases does not somehow demonstrate that Jenna Perez is biased against Mr. Gendia or against all men.

application of this policy evidences gender bias against him, when he did not accept responsibility for any misconduct.

Finally, Plaintiff's Opposition Memorandum focuses on the fact that Drexel proceeded with its internal Title IX investigation while a criminal investigation was ongoing. It is unclear what this has to do with gender bias. Moreover, Plaintiff cites absolutely no authority that there is anything wrong with both investigations being conducted simultaneously. *See* Pl. Br. at 13-14. He does not address the authority cited by Drexel in its Motion to Dismiss that there is no obligation for Drexel to suspend its investigation. *See* Def. Motion at 22, n. 12. Nor does he cite any precedent from any context that would suggest that it is unfair or unreasonable to do so. Internal processes, like investigations regarding employment decisions, happen all the time when criminal charges are pending. And in any event, Drexel waited until the criminal trial was completed before proceeding with its internal adjudicatory hearing.[2]

## II.    Plaintiff's Breach of Contract Claim Fails.

Plaintiff's Opposition Brief alleges that Drexel breached its contract with Plaintiff by acting unfairly. The only such "breach" Plaintiff has identified anywhere is a supposed failure to allow him to cross examine Mary Roe.[3] Plaintiff admits that he was given a form of cross examination, in that he could present questions to the adjudicator to be posed to Mary Roe

---

[2] The Court may judicially notice the docket in Gendia's criminal case which shows that the criminal trial concluded on May 23, 2018. *Commonwealth of Pennsylvania v. Abdallah Gendia*, Criminal Docket No. MC-51-CR-0005258-2018 (Municipal Court of Philadelphia County May 23, 2018). The administrative hearing was held on June 26, 2018. Compl., at ¶ 70.

[3] Plaintiff states that "Plaintiff's specific allegation that he was not permitted to cross-examine witnesses" was not the "sole basis" for his breach of contract claim. Pl. Br. at 17. However, Plaintiff's Opposition Brief, like the Amended Complaint, only discusses the alleged issue of cross-examination as evidence of Drexel's breach, aside from general, unspecific notions of unfairness. *See* Pl. Br. at 16-17 (discussing only cross-examination); Am. Compl. at ¶ 94 (same). Even after Drexel pointed out this fact in its Motion to Dismiss, Plaintiff failed to articulate another supposed breach of the principle of "fairness" in his Opposition Brief.

and other witnesses.  *See* Pl. Br. at 17.  But Plaintiff argues that the opportunity for cross-examination was a "sham" because the external adjudicator, Kelley Hodge, decided what questions should be asked.  Plaintiff further argues that Ms. Hodge's position as a "gate-keeper for any questioning [was] not 'fair.'"  *Id.*

Having an adjudicator decide what questions are and are not relevant is hardly unfair.  It is exactly how cross-examination works in criminal and civil trials.  Parties and/or counsel cannot ask whatever question they want to ask; the judge, as the gate-keeper, gets to decide if the questions are proper and relevant.  Like in a civil or criminal trial, Plaintiff was given the opportunity to pose questions in the Title IX hearing, subject to Ms. Hodge's discretion as the external adjudicator.  Notably, Plaintiff does not allege that he did not have the opportunity to pose questions, that certain key questions were unfairly rejected by Ms. Hodge, or that all of his questions were rejected by Ms. Hodge when posed.

Rather, Plaintiff cites to the fact that the Final Outcome Determination Memorandum prepared by Ms. Hodge does not identify "any such instances whereby Plaintiff had any meaningful opportunity to interpose any questions to any adverse witnesses."  Pl. Br. at 17.  But the Memorandum is a summary of Ms. Hodge's findings based on, among other things, testimony offered by the parties and witnesses at the hearing, and does not provide a full transcript of every question asked and answered.  More importantly, if there were certain questions that were asked by Plaintiff during the Title IX hearing that were rejected by Ms. Hodge, Plaintiff should have plead those facts in his initial or amended Complaints.  Plaintiff cannot now, when confronted with the fact that he was given the opportunity to pose questions at the Title IX hearing, claim that this "opportunity" was a sham without anything more.

## **CONCLUSION**

For the reasons discussed above and in Drexel University's opening brief, the Court should grant the motion to dismiss.

Respectfully submitted,

Dated: August 14, 2020

*/s/ Michael E. Baughman*
Michael E. Baughman, Esq.
Mia S. Rosati, Esq.
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000
baughmam@pepperlaw.com
*Attorneys for Drexel University*

## **CERTIFICATE OF SERVICE**

I certify that on August 14, 2020, I filed the foregoing Reply Brief in Support of Motion to Dismiss through the Court's Electronic Case Filing (ECF) system.

*/s/ Michael E. Baughman*
Michael E. Baughman, Esq.