IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDALLAH GENDIA,<br>    **Plaintiff,** | CIVIL ACTION |
| v. | |
| DREXEL UNIVERSITY,<br>    **Defendants.** | NO.  20-1104 |

### MEMORANDUM OPINION

Plaintiff Abdallah Gendia sues Defendant Drexel University ("Drexel") for violating Title IX of the Education Amendments of 1971, 20 U.S.C. §§ 1681-1688, and for breach of contract.  Drexel moves to dismiss.  For the reasons that follow, Drexel's motion will be granted.

**I.   BACKGROUND**

In the summer of 2016, Gendia and Mary Roe,[1] both students at Drexel, became romantically involved.  The relationship "was characterized by emotional volatility, including a cycle of separation and reconciliation," and ultimately ended in December 2017.

On March 1, 2018, Roe filed a Title IX complaint with Drexel against Gendia, alleging acts of intimate partner violence, stalking and sexual harassment.  The basis for her allegations was that in August 2017 Gendia had choked her and threatened to kill her dog and that in February 2018, he had punched her in the head causing her injury.  Gendia was criminally charged for the punching incident but was later acquitted of all charges.

On March 3, 2018, Gendia filed his own complaint with Drexel against Roe in which he alleged that Roe eavesdropped on conversations inside his apartment while she was outside, sent harassing text messages threatening to destroy his property, disparaged him on the basis of race, religion, citizenship status and national origin, and that she attempted to punch him in the face.

---

[1] "Mary Roe" is an alias.

Gendia characterized Roe as the aggressor during the February 2018 punching incident, explaining that she appeared to be drunk, that she injured herself when she attempted to punch *him*, lost her balance, fell, and hit her head.

After receiving Roe's complaint, Drexel began an internal Title IX investigation. Gendia raises several concerns with the manner in which the investigation was conducted. Primarily, he contends that the investigation was biased, incomplete and materially defective in many regards including in assuming the veracity and credibility of Roe's account, assuming from the outset that he was guilty, asking gender-biased questions, and excluding non-relevant evidence he offered but admitting non-relevant evidence supplied by Roe.

More generally, he complains that Drexel maintains an investigatory and adjudicatory system that favors female students at the expense of male students, that the university's Title IX training materials for taking reports and carrying out investigations on campus sexual assault inherently portray women as the victims of men, and that a pamphlet distributed by Drexel to its students titled "Date Rape/Acquaintance Rape" portrays only women as victims of sexual assault and only men as perpetrators.

During the course of his criminal case, an *ex parte* restraining order had been entered against Gendia for the benefit of Roe which provisionally banned him from campus. Gendia, through counsel obtained a modification of the restraining order which, by its terms, allowed him back on university grounds. He alleges that he was directed by Drexel administrators to come to campus to deliver the modified restraining order but that, when he did, he was advised that he was permanently banned from campus pending the outcome of the Title IX investigation. As a result, he missed the end of his academic term and was unable to complete final exams. The ban also had the effect of inhibiting his ability to defend himself and, thus, to expose him to greater

risk of disciplinary action.  Furthermore, he contends that Drexel knew that he could not respond to the university's request for information during the investigation because to do so would jeopardize his Fifth Amendment rights in the criminal proceedings against him.

Once he had been acquitted of the criminal charges against him, Gendia demanded that Drexel hire an expert to evaluate his claim that the head injury Roe suffered in February 2018 was the result of the blunt force trauma of her falling to the ground.  Drexel did retain an expert who concluded that Roe's injuries had not been caused by a fall.  The expert's determination was, according to Gendia, consistent with "Drexel's pre-determined outcome."  Drexel shared the expert report with Gendia a few days before an adjudicatory hearing but refused to allow him time to produce a rebuttal report.

The investigation culminated in a live adjudicatory hearing to hear the charges against both Gendia and Roe.  The hearing adjudicator was an outside attorney hired specially for that purpose.  On July 5, 2018, Drexel found Gendia guilty of choking Roe, threatening to kill her dog, stalking her with unwanted communications, threatening to engage in self-harm unless she continued their relationship, and punching her in the head causing a laceration.  It also found Roe guilty of stalking Gendia outside his apartment, sending him harassing texts which threatened his property and disparaged his race, religion, citizenship status and national origin, and of attempting to punch him in the face.  Five days later, Drexel notified Gendia that he would be expelled, and that Roe would be suspended for six months.  Both parties appealed.  Gendia's expulsion was upheld on appeal, but it was determined that Roe's suspension was "too severe," and the suspension was deferred to allow her to complete certain credits.

Gendia contends that while Drexel's investigation and adjudication were conducted pursuant to its operating policies and procedures, those policies and procedures produce unfair,

discriminatory and erroneous outcomes.  Specifically, they permit a Title IX investigation to occur in tandem with a criminal prosecution, required that an accused student gives statements and or testimony about investigated incidents even while they are subject to criminal prosecution on the same facts, they permit an inference of guilt from an accused student's silence and refusal to participate in a Title IX investigation and they allow the imposition of greater discipline when an accused student "maintains his or her innocence."

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.

While a court on a motion to dismiss "must accept all factual allegations in [a plaintiff's] complaint as true, [a court is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotations and citations omitted).  That is because "a complaint must do more than allege the plaintiff's entitlement to relief;" rather, in must "show such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (internal quotations and citations omitted).

## III. DISCUSSION

### A. Title IX

Gendia argues that Drexel violated Title IX by discriminatorily investigating and adjudicating his and Roe's internal complaints.

Pursuant to Title IX, "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving [f]ederal financial assistance." 20 U.S.C. § 1681(a). Individuals may sue under Title IX, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 702 (1979), and to state a claim under the statute, a plaintiff must "allege[] facts [that] if true, . . . support a plausible inference that a federally-funded college or university[2] discriminated against a person on the basis of sex," *Doe v. Univ. of the Sciences*, 961 F.3d 203, 209 (3d Cir. 2020) ("*University of the Sciences*").

Specifically, "[b]ecause Title IX prohibits . . . subjecting a person to discrimination on account of sex," a plaintiff may state a claim for under Title IX by alleging facts suggesting that his sex was "a motivating factor in [a] decision to discipline." *Id.* (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016)). For example, a school's disparate treatment of men and women in investigatory and adjudicatory proceedings may, under certain circumstances, raise such an inference. In *University of the Sciences*, the Third Circuit found that plaintiff, a male student, had plausibly alleged that sex motivated defendant university's decision to discipline where plaintiff alleged that the university was on notice that both he and a female student had potentially violated the school's consent policy by having sex while intoxicated, but the university only investigated him. *Id.* at 210. The Third Circuit concluded that this disparity, coupled with allegations that the university had been unduly influenced by a Department of Education's 2011 "Dear Colleague Letter," which "ushered in a more rigorous approach to campus sexual misconduct allegations," plausibly stated a claim under Title IX. *Id.* at 211.

But, general allegations that a school's Title IX policies favor one gender over another

---

[2] Drexel does not contest that it is a federally-funded university.

5

are insufficient to support a plausible inference of discrimination.  *See Doe v. Princeton Univ.*, 790 F. App'x 379, 383 (3d Cir. 2019) (finding statement that defendant university "'does not believe male students can be victims,' . . . too 'generalized' and 'conclusory' to raise an inference of disparate treatment" (internal quotations and citations omitted)); *Doe v. Pennsylvania State Univ.*, 2018 WL 317934, at *5 (M.D. Pa. Jan. 8, 2018) (finding plaintiff's allegations that university's "existing practices and procedures discriminate, on the basis of sex, against the male accused" and that the university "conducted its investigation of the allegations against [him] in a manner that was slanted in favor of the female accuser[]" conclusory).

In his Amended Complaint, Gendia alleges that Drexel's investigation was "biased, incomplete and materially defective" in violation of Title IX in that it assumed the truthfulness of Roe's account; assumed Gendia's guilt; asked Gendia gender-biased questions; maintained an investigatory and adjudicatory system that favored female students; penalized Gendia for not responding to Drexel requests for information "despite [his] facing related criminal charges and that such requests could not be honored without jeopardizing Gendia's Fifth Amendment rights;" and excluded "non-relevant evidence offered by Gendia while admitting non-relevant evidence from Roe."

Taking Gendia's allegations in turn: Gendia states that Drexel assumed Roe's truthfulness and his guilt, and quotes a Drexel investigator as saying that "she believed Roe and Gendia would be responsible for disproving the allegations against him."  However, Gendia does not connect this credibility determination by the investigator to his or Roe's gender.  The same is true of his allegation that Drexel's exclusion of some evidence against Roe and inclusion or evidence against him evinces bias.  Title IX prohibits discrimination in education "*on account of sex;*" it does create a cause of action for generalized deficiencies in a school's investigatory or

6

adjudicatory process. *See, e.g.*, *Pearson v. Logan Univ.*, 937 F.3d 1119, 1125 (8th Cir. 2019) (explaining that "dissatisfaction with [a] school's response" to Title IX complaint does not amount to a violation of that statute); *Doe v. Rider Univ.*, 2018 WL 466225, at *9 (D.N.J. Jan. 17, 2018) ("[S]pecific allegations of procedurally flawed proceedings coupled with conclusory allegations of gender discrimination are not sufficient to survive a motion to dismiss.").

Next, Gendia states that Drexel maintained an investigatory and adjudicatory system that favored women. As examples of bias in Drexel's system, Gendia asserts that "Drexel's Title IX training materials for taking reports and carrying out investigations on campus sexual assault inherently portray women as victims of men" and that "Drexel has also distributed to students on campus documents titled 'Date Rape/Acquaintance Rape' that portray only women as victims of sexual assault and only men as perpetrators." He also criticizes Drexel's willingness to conduct a Title IX investigation "in tandem with a criminal prosecution," its "policy or practice permitting an inference of guilty from an accused student's silence or refusal to participate in a Title IX investigation," and "permitting the imposition of greater discipline when an accused student maintains his or her innocence" as indicative of anti-male bias. However, Gendia has likewise failed to plead facts connecting these alleged shortcomings to Drexel's discrimination against him on account of his sex.[3] Neither can Drexel's Title IX and "Date Rape/Acquaintance Rape" materials alone provide the necessary connection. *See Doe v. Colgate Univ.*, 760 F.

---

[3] Additionally, with respect specifically to Gendia's criticisms concerning conducting an internal investigation in tandem with a criminal investigation, nothing in the caselaw suggests that conducting an internal investigation in tandem with a criminal investigation is inherently discriminatory or otherwise illicit. *See MacKay v. Drug Enf't Admin.*, 664 F.3d 808, 820 (10th Cir. 2011) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. This rule applies with equal force to administrative proceedings." (internal quotations, citations and alterations omitted)); *see also Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1296-97 (11th Cir. 2007) (finding plaintiff stated a claim under Title IX where school *delayed* its investigation because of pending criminal charges against assailants, explaining, *inter alia*, that "the pending criminal charges did not affect [the university's] ability to institute its own procedures).

App'x 22, 31 (2d Cir. 2019) (finding that Title IX coordinator's use of "complainants using female pronouns and respondents with male pronouns because in her experience, most complainants were female and most respondents were male" insufficient evidence of gender bias).

Turning to the allegation that Drexel's Title IX investigator asked "gender-based questions," Gendia provides only one example of such a question. According to Gendia, when he related his recollection of the February 2018 punching incident, Drexel's investigator responded with "then how did she get the cut?" However, there is nothing inherently or impliedly gendered about this question. For example, this question is nothing like the statements allegedly made by university officials in *Saravanan v. Drexel University*—which Gendia to cites extensively for support—where one official allegedly reacted to male plaintiff's claim that he had been assaulted by a female student who had also filed a complaint against him by asking why his penis had been erect during the assault if he had not been a willing participant, and where another stated that he had never heard of a man being raped by a woman. *Saravanan v. Drexel Univ.*, 2017 WL 5659821, at *5 (E.D. Pa. Nov. 24, 2017).

Neither does Drexel's imposition of different sanctions on Gendia and Roe (*i.e.*, initially banning Gendia from campus but not Roe, and ultimately expelling Gendia, but not Roe) evince gender bias in its investigatory or adjudicatory process. Though Gendia maintains that *University of the Sciences* compels a finding in his favor because "the appeals court did not endeavor to articulate what facts are necessary or sufficient to survive a motion to dismiss," *University of the Sciences'* factual background is instructive. In *University of the Sciences*, the university failed to even investigate the female students involved with plaintiff, even though the administration was on notice that these women had also violated potentially university policy.

8

961 F.3d at 201-11.  This glaring disparity in treatment, combined with the allegations that the university had been unduly influenced by guidance from the United States Department of Education, compelled the Third Circuit to find that plaintiff had stated a plausible claim under Title IX.  *Id.* at 211.  Here, however, no such disparity exists.  Drexel not only investigated *both* Gendia and Roe, but it also found *both* parties guilty, and imposed sanctions on *both* parties.  As for *Saravanan*, which Gendia also maintains compels a finding in his favor, quite apart from having no precedential value here, it too is distinguishable.  First, while the court in *Saravanan* did find that plaintiff had stated a claim against the university (in that case, also Drexel), the allegations were much more egregious than those here, including, as noted, allegations that university officials had questioned whether it was possible for a woman to rape a man.  2017 WL 5659821, at *5.  Second, the *Saravanan* court rejected plaintiff's argument sounding in selective enforcement on the basis that plaintiff and his female assaulter/accuser were found guilty of different offenses (sexual harassment and stalking for plaintiff versus sexual harassment but no stalking for the female student).  *Id.* at *6.  This general principle—that different sanctions for similar conduct may raise an inference of discrimination, but that different sanctions for different conduct generally do not—applies equally to Drexel's intervening measures (ban from campus for Gendia after he was criminally charged and a restraining order was entered against him, versus no ban for Roe, who had no restraining order against her) as to it ultimate sanctions (expulsion for Gendia for two batteries, versus suspension for Roe one assault[4]).  *See id.*; *University of the Sciences*, 961 F.3d at 211.

        Because Gendia has failed to allege facts suggesting that his sex was a motivating factor

---

[4] The Court here uses the terms "battery" and "assault" here illustratively as they are generally defined at common law, where a "battery" is an offensive contact (here, choking, punching) and an "assault" is an act that puts another in fear of an offensive contact (here, the attempted punching).  *See* Black's Law Dictionary (11th ed. 2019).

9

for Drexel's decision to discipline, Gendia's Title IX claim shall be dismissed.

### B. Breach of Contract

Gendia argues that Drexel breached its contract with him, as contained in the school's "Title IX policy," by failing to treat him with fundamental fairness.

Under Pennsylvania law, "three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (2016). A student handbook may constitute a contract between a school and its students, and, where a handbook promises that Title IX claims will be investigated and adjudicated fairly, a school may breach its contractual duty towards its students by not investigating and adjudicating such claims fairly. *University of the Sciences*, 961 F.3d at 212. In *University of the Sciences*, for example, the student handbook promised students "fairness," but did not define the term. The Third Circuit found that "fairness" in that context "related to procedural protections for students accused of sexual misconduct." *Id.* Specifically, the court found that "the basic elements of federal procedural fairness in a Title IX sexual-misconduct proceeding include a real, meaningful hearing and, when credibility determinations are at issue, the opportunity for cross-examination of witnesses." *Id.* at 215. As to the defendant in that case specifically, the court held that "contractual promises of 'fair' and 'equitable' treatment to those accused of sexual misconduct require at least a real, live, and adversarial hearing and the opportunity for the accused student or his or her representative to cross-examine witnesses—including his or her accusers," though it did not "attempt to prescribe the exact method by which a college or university must implement these procedures." *Id.*

Like the *University of the Sciences* defendant's student handbook, Drexel's Title IX policy promises to provide "a fair adjudicatory and resolution process" for Title IX complaints. Drexel does not contest that its Title IX policy constituted a contract with Gendia, or that a breach of such contract would result in damages. Drexel denies, however, that it breached its contract by failing to provide Gendia with a "fair" process. Indeed, Drexel fulfilled the requirements for fundamental fairness outlined in *University of the Sciences*. *See id.* at 215. Unlike in *University of the Sciences*, where plaintiff was not allowed a hearing, Drexel conducted a live adjudicatory hearing. And, while the parties were not allowed to cross-examine each other directly, they were allowed to submit questions to the adjudicator. Though Gendia characterizes this "'opportunity' to cross-examine" as "superficial at best" and a "sham" because the adjudicator was a "gate-keeper for any questioning," the *University of the Sciences* court was clear that it would not "prescribe . . . exact method[s]" for implementing fundamental fairness, and the Court declines to read *University of the Sciences* as requiring *live* cross-examination by an accused or his representative as a prerequisite to fairness.

Because Drexel provided Gendia with a "fair" process both within the meaning of its policy, Gendia's breach of contract claim shall be denied.

For the foregoing reasons, Drexel's Motion to Dismiss shall be granted.

An appropriate order follows.

**September 2, 2020**                              **BY THE COURT:**

                                                   **/s/Wendy Beetlestone, J.**

                                                   _____

                                                   **WENDY BEETLESTONE, J.**